**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CASE NO.: 7:18cr585 (VB)** |
| **PLAINTIFF** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DARIUS MONROE,** | : | |
| **DEFENDANT** | : | **July 1, 2019** |

**SENTENCING MEMORANDUM SUBMITTED ON
BEHALF OF DEFENDANT
DARIUS MONROE**

Bruce D. Koffsky
KOFFSKY & FELSEN, LLC
1150 Bedford Street
Stamford, CT   06905
(203) 327-1500

*Attorney for Defendant*
*DARIUS MONROE*

LAW OFFICES OF
## KOFFSKY & FELSEN, LLC
1150 Bedford Street
Stamford, Connecticut  06905
(203) 327-1500
Facsimile (203) 327-7660

July 1, 2019

<u>Via ECF/email</u>

The Honorable Vincent L. Briccetti
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

Re:      <u>United States v. Darius Monroe</u>
         7:18cr585 (CS)

Dear Judge Briccetti:

This letter and its attachments are submitted on behalf of Darius Monroe, who is scheduled to be sentenced by the Court on July 11, 2019.  It is hoped that the undersigned is articulate enough to identify and document the defendant's individual characteristics, personal achievements, life history both positive and negative so as to assist the Court in determining a sentence that is appropriately tailored to serve both the interests of justice and the sentencing goals of 18 U.S.C.§ 3553(a).  As will be more fully discussed below, we believe that Darius Monroe's unique set of circumstances, viewed through the prism of 18 U.S.C. § 3553(a), warrant a non-guideline sentence. Mr. Monroe respectfully requests that the Court impose a sentence of **84 months** and order the Bureau of Prisons to credit him for time detained in the instant case. Such a sentence, considering this specific individual, would be sufficient, but no greater than necessary to achieve the purposes of sentencing.

## **BACKGROUND**

On or about June 15, 2018, Darius Monroe was arrested by federal authorities and charged with possession of a firearm and being involved in a narcotics trafficking conspiracy that engaged in the street-level distribution of heroin in Orange County, New York.  (At his presentment, Mr. Monroe was ordered detained and he has remained so during the pendency of his case.)  During the next several weeks, several other members of the drug trafficking organization were arrested and likewise charged with narcotics trafficking of heroin in the Middletown, New York area.  On February 27, 2018, Mr. Monroe appeared before the Court and plead guilty to Count One of the Indictment which charged him with Conspiracy to Distribute and Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) which provides for a sentencing range of between 5 and 40 years of incarceration.

Hon. Vincent L. Briccetti
United States District Judge
Re:     United States v. Darius Monroe
Monday, July 1, 2019
Page 2.

The Plea Agreement dated February 6, 2019, outlined the agreement reached between the government and Mr. Monroe to resolve the pending criminal case.  The agreement provided that Mr. Monroe was admitting that his participation in the Count One Orange County heroin trafficking conspiracy involved the distribution of at least 400 grams but not more than 700 grams of heroin which is designated a level 26 by the most current sentencing rubric of U.S.S.G. § 2D1.1.  Mr. Monroe admitted to a firearms enhancement pursuant to U.S.S.G. § 4B1.1(b) and the plea agreement calculated that Mr. Monroe's criminal history, 13 countable criminal history points, would place him within Criminal History Category VI.  And by voluntarily pleading guilty and offering an acknowledgement and acceptance of his criminal conduct, Mr. Monroe merited a 3 point downward adjustment for acceptance of responsibility.  Should all of that be the case, Mr. Monroe's sentencing mathematics would have identified a U.S. Sentencing Guideline range of somewhere between 110 and 137 months imprisonment.

But as a result of two prior convictions, one for the 2014 New York offense of "Criminal Sale of a Controlled Substance in the Third Degree," and the other, for the offense of Robbery in the 3rd degree which occurred almost 10 years in the past, Mr. Monroe's actual sentencing guidelines – as a Career Offender – skyrocket to a sentencing guideline range of 188 to 235 months in prison.

We suggest that to sentence Mr. Monroe as a "career offender," to incarcerated him for a period of time triple what the run-of-the-mill sentencing guideline provides for a run-of-the-mill street-level drug case, would violate the principles of justice and fairness required by 18 U.S.C. § 3553(a).  It is Mr. Monroe's request that the Court impose a sentence of **84 months** as punishment for the offenses he has committed.  Such a sentence would be a non-guideline sentence and would be arrived at by determining that in Mr. Monroe's specific situation, after reviewing his individual characteristics and personal history, a variance from the sentencing guidelines is appropriate.[1]  Such a sentencing would be an equivalent sentence to what the manager of this charged drug trafficking organization received after having pled to identical conduct as Mr. Monroe. We submit that such a sentence would also be arrived at by determining that a career offender sentence would

---

[1] A court may impose a sentence outside the properly calculated sentencing guideline range through either a departure or a variance.  A "departure" is typically a change from the final sentencing range computed by examining the provisions of the Guidelines themselves. It is frequently triggered by a prosecution request to reward cooperation . . . or by other factors that take the case "outside the heartland" contemplated by the Sentencing Commission when it drafted the Guidelines for a typical offense. A "variance," by contrast, occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in 18 U.S.C. § 3553(a).  See U.S. Sentencing Commission, Departure and Variance Primer, June 2013 (http://www.ussc.gov/sites/default/files/pdf/training/primers/Primer_Departure_and_Variance.pdf ).

Hon. Vincent L. Briccetti
United States District Judge
Re:     United States v. Darius Monroe
Monday, July 1, 2019
Page 3.

be unduly harsh, unjustified and more than necessary to satisfy the directives of 18 U.S.C. § 3553(a).

Mr. Monroe now stands ready for sentencing.

## PERSONAL HISTORY AND CHARACTERISTICS

### A. Personal History

Much of Darius Monroe's life has been described in detail in United States Probation Officer Sara K. Willetts's well-written presentence report.  Now 30 years old, Mr. Monroe is the product of a lack of parental supervision, no positive male role models, the poverty of Middletown, New York and a barely contained anger at the knowledge that he could have been so-much more. Born to a single-mother who left young Darius alone for long stretches of time while she worked, Darius found the pull of the streets way more powerful than the effort an education and living by modern community standards would require.  He knows that at one point, his future was wide open to him, with accolades from coaches that his natural athletic ability was going to get him into a Division 3 or maybe even Division 2 school to play either basketball or football.  He understands that he has only himself to blame for sabotaging what could have been a ticket out of his ghetto. Yes, he can identify the fact that his father lived in the same town as he did but never once called to identify himself as his parent or that his mother had to leave young Darius to serve a 1 ½ to 3 year jail sentence, leaving Darius with family members…those are some of the reasons for his anger but it was he who made the decision to hang-out with gang members and engage in criminal activity and it is a record the defendant is not proud of.

Like so many adolescent boys with little or no supervision, substance abuse came early to the defendant.  The probation officer's report identifies the defendant's marihuana usage for the last several years as being "all day, every day" and continuing until the defendant's recent incarceration. (See ¶ 100.) Mr. Monroe describes his 7 year addiction to "Lean," a concoction of cough syrup and codeine which, when taken, produces a high similar to heroin. (See ¶ 102.)

But there are many bright spots to his life as well.  For many years, Mr. Monroe has been romantically involved with Mr. Kadijah Zwart.  Mr. Monroe and Ms. Zwart have a child together and they raise a son from Ms. Zwart's prior relationship.  Mr. Monroe also can boast of a varied employment history where he held down full-time positions in the food-service, retail and factory environments.  Although he has told Ms. Zwart that she is free to move on, Mr. Monroe hopes,

4

Hon. Vincent L. Briccetti
United States District Judge
Re:      United States v. Darius Monroe
Monday, July 1, 2019
Page 4.

once he completes his sentence, to rejoin his family and gain employment that is both satisfying and honorable.

Mr. Monroe's behavior while detained in the instant case has also been exemplary.  As Officer Willette's presentence report identifies, the defendant has not received a single citation in the 12 months he has been detained. (See ¶¶ 8-9.)

Oftentimes the history and characteristics of a defendant can be best illustrated by the defendant's own words.  The undersigned has asked Mr. Monroe to describe himself to the Court and he has done so as follows:

> "Basically you wanted me to tell you about me so I'll start by telling you I'm from Middletown, N.Y., born and raised.  As a child I always lived with my mother (Theresa Clemons).  Her and my father were not together when I was born.  I always knew who my father was (Larry Monroe).  He was part of my life, just not as much as he should of been.  I'm the only child with my mother.  My mother did her best for me.  She was a corrections officer.  I grew having everything I needed, never really a struggle.

> I played sports most of my life (basketball and football) from youth to high school, AAU travel teams!  I had 2 scholarships to division 3 and 2 teams.  I was always a quite kid, was never a class clown.  Fast learner.  Wasn't really interested in school to be honest.  I went to school to keep playing football and basketball.  I managed to get passing grades to stay on the team.

> I never got into trouble until I was out of high school with the law.  I left high school because they told me I wouldn't graduate on time.  It was dumb but once they told me that, I just stopped going.  Once I stopped going, I was told I have to get my GED and get a job which I did.  I started a program at Orange County Community College to earn my GED and earn college credits.  In 2009, I did two semesters then got in trouble with the law for the first time.

> I always keep a job.  I worked at Wendy's, Banana Republic, Boston Market… until I found otherways to get money.  That's when my life went downhill for the most part.

> At 24 years old I had my first child, before that I was already taking care of my stepson since he was 3 months.

Hon. Vincent L. Briccetti
United States District Judge
Re:     United States v. Darius Monroe
Monday, July 1, 2019
Page 5.

> I basically had my own family.  I always been in both kids life since they were born.
> They come first.  I'm with them everyday while there mother is at work, take them
> to school, pick them up from school…take them to whatever activities they have
> ex. (dance, karate, football, basketball).  I know I'm a great father because they love
> me and I spend time with them.
>
> I thought I was doing the right thing at the time by giving them everything they
> need but I wasn't.  Now I'm away from the people that need me the most, for the
> mistake I made.
>
> I have a trade in custody maintenance.  I don't know what else to tell you…  I'm
> not perfect, I'm only human."

The defendant has attached to this sentencing submission, letters from family and friends that the defendant asks the Court to consider when determining an appropriate sentence in this case.  (See Exhibit A – Letters in Support of Sentencing.)

## THE APPROPRIATE SENTENCE

A District Court should normally begin all sentencing proceedings by calculating, with the assistance of the Presentence Report, the applicable Guideline Range.  Gall v. United States, 128 S. Ct. 586, 596 (2007).  The Guidelines provide the "starting point and the initial benchmark" for sentencing, Gall, 128 S. Ct at 596, and the District Courts must "remain cognizant of them throughout the sentencing process." Id, at 596 n.6.   Now, however, it is clear that the Guidelines are guidelines – that is, they are truly advisory.  United States v. Cavera, 550 F.3d 180 (2d Cir. 2008) [Emphasis added].    "A District court may not presume that a Guideline sentence is reasonable, it must instead conduct its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense.  District Judges are, as a result, generally free to impose sentences outside the recommended range.  Id.  Once again, District judges may exercise discretion in fitting sentences to a defendant's individual characteristics.  United States v. Crosby, 397 F.3d 103, 114 (2d Cir. 2005).

In exercising this discretion, judges are guided by 18 U.S.C. § 3553(a), which directs them to impose a sentence that is "sufficient, but not greater than necessary" to, among other considerations, "reflect the seriousness of the offense, . . . promote respect for the law, and provide just punishment for the offense," and to "afford adequate deterrence to criminal conduct." 18

Hon. Vincent L. Briccetti
United States District Judge
Re:     United States v. Darius Monroe
Monday, July 1, 2019
Page 6.


U.S.C. § 3553(a)(2). The statute also directs courts to consider, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), as well as "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

### A.  <u>The Court should Impose a Non-Career Offender Sentence</u>

As this Court knows, the Guideline range is but one of many factors set forth in 18 U.S.C. § 3553(a) that a District Court is to consider when imposing sentence.  *See generally* <u>U.S. v. Booker</u>, 543 U.S. 220 (2005).  "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."  <u>Nelson v. United States</u>, 555 U.S. 350, 352 (2009) (emphasis in original).  At bottom, a sentencing court "has broad latitude to 'impose either a Guidelines sentence or a non-Guideline sentence.'" <u>United States v. Rigas</u>, 583 F.3d 108, 114 (2d Cir. 2009).

A court's exercising discretion to vary downward is particularly appropriate in the context of the Career Offender Guideline, U.S.S.G. § 4B1.1, which ties the offense level to the statutory maximum of the offense of conviction and produces "some of the most severe penalties imposed under the guidelines.  U.S. Sent. Comm., *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform*, at 133-34 (2004).  In light of the severity of those penalties, the Second Circuit has repeatedly reminded district courts that they "may impose a sentence outside the range called for by the Career Offender Guideline." <u>United States v. Preacely</u>, 628 F.3d 72, 79 (2d Cir. 2010)(*citing* <u>United States v. Sanchez</u>, 517 F.3d 651, 664-65 (2d Cir. 2008).

In the drug context, the Career Offender Guideline contains multiple irrational features, several or which are particularly relevant to Mr. Monroe's case.  First, it arbitrarily double counts a defendant's criminal record by using it to increase both the offense level and the criminal history category.  *See, e.g.* <u>United States v. Williams</u>, 372 F.Supp.2d 1335, 1339 (M.D. Fla. 2005)(noting with disapproval the Career Offender Guideline's "double-compounding effect.")

Second, it discriminately treats predicate drug offenses alike, regardless of whether those offenses involved thousands of kilograms of drugs or only a few grams.  *See* <u>United States v. Moreland</u>, 366 F. Supp. 2d 416, 424 (W.D. Va. 2005)(noting that the Career Offender Guideline "provides no mechanism for evaluating the relative seriousness of the underlying prior

Hon. Vincent L. Briccetti
United States District Judge
Re:    United States v. Darius Monroe
Monday, July 1, 2019
Page 7.

conviction"). This feature of the Guideline is especially concerning in Mr. Monroe's case, where his predicate drug offense involved the street-level sales of drugs. (See ¶ 64.)

Third, because the Career Offender Guideline determines the offense level exclusively by the statutory maximum, it unfairly lumps together defendants whose instant offenses involve wildly disparate drug quantities and criminal behavior. Treating unlike cases alike is the very definition of unfairness; yet the Career Offender Guideline does just that.

Absent the career offender enhancement, Darius Monroe's Guideline range would be 110 and 137 months imprisonment. Applying the Career Offender Guideline, however, takes the range from excessive to absurd by almost doubling it to 188 to 235 months. Such a sentence would strike at the heart of the parsimony clause of 18 U.S.C. § 3553(a). The Career Offender guideline calls for a sentence that is unreasonable and the Court should decline to follow it.

**B.    A "Non-Guideline" Sentence Is Appropriate Given The Need To Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty Of Similar Conduct.**

In the section entitled "Introduction and General Application Principles" of the United States Sentencing Guideline Manual, the "Policy Statement" provides that "Congress sought uniformity in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders… Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity." § 1A1.1, Federal Sentencing Guideline Manual, 2018 Edition. The defendant submits that sentencing him to a Career Offender guideline sentence would be neither uniform nor proportional to those sentences meted out, certainly to the co-defendants in this present indictment.

The defendant would of course point to the lead defendant in this very case, an individual who pled to a heroin drug conspiracy charge involving 400 to 700 grams of heroin which was accompanied by a firearms enhancement. The nature of the lead defendant's criminal conduct is particularly described in the government sentencing submission (See Docket Entry 46) and merited a three level enhancement for leadership. That defendant was sentenced by the Court to an 84 month term of imprisonment. Darius Monroe's involvement in the crimes charged is virtually indistinguishable from that of this defendant.

Hon. Vincent L. Briccetti
United States District Judge
Re:      United States v. Darius Monroe
Monday, July 1, 2019
Page 8.


As a result of the guiding principal of avoiding unwarranted disparities among defendants, the defendant submits that a "non-guideline" sentence of **84 months** is appropriate in this matter.


## CONCLUSION


In light of all of the above, it is respectfully requested that this Court temper justice with mercy and impose a sentence that is sufficient, but no greater than necessary to meet the goals of sentencing.


Respectfully submitted


/s/ Bruce D. Koffsky
Bruce D. Koffsky


cc:      Gillian Grossman, AUSA
         Counsel of Record via ECF